IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRUCE HORTON,

    Plaintiff,

  v.

UNITED STATES OF AMERICA,

    Defendant.

No. C-13-4912 MMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; VACATING HEARING**

Before the Court is defendant United States of America's Motion to Dismiss, filed January 13, 2014. Plaintiff Bruce Horton ("Horton") has filed opposition, to which the United States has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter appropriate for determination on the parties' respective written submissions, VACATES the hearing scheduled for March 21, 2014, and rules as follows.

## BACKGROUND

Horton alleges that, in 2004, he invented "a machine in the field of acoustic wave propagation" (see Compl. ¶ 6), and disclosed his invention to the Army (see Compl. ¶¶ 7-8). According to Horton, the Army told him "not to reveal his invention to anyone." (See Compl. ¶ 8.) Horton also alleges that he told "the attorney for the Army" he wanted to apply for a patent for his invention (see Compl. ¶ 9), and that he thereafter entered into an agreement, titled Representation Letter and dated December 9, 2004, in which the United

States stated it would file a patent application on Horton's behalf (see Compl. Ex. 2).

On May 12, 2005, the Army sent a letter to the Patent and Trademark Office ("PTO"), in which, pursuant to 35 U.S.C. § 181, it requested the PTO "order that the invention be kept secret and withhold the grant of a patent for such period as the national interest requires" and, further, order that the applicable "level of protection or classification" be "top secret." (See Compl. Ex. 4.) Thereafter, the PTO issued a "Secrecy Order," in which it stated that, upon the Army's recommendation, Horton's application had been "classified" as "top secret." (See Compl. Ex. 5.)

On February 20, 2012, Horton submitted to the Army an administrative claim, contending the Army had made use of his invention, which use entitled him to compensation and damages, pursuant to 35 U.S.C. § 183. (See Compl. Ex. 6.) On May 22, 2013, the Army denied the claim as premature, on the ground that an inventor is not entitled to compensation or damages under § 183 until after the PTO notifies the inventor that "except for [the secrecy] order, his application is otherwise in condition for allowance," and that the PTO had not so notified Horton. (See Compl. Ex. 7 at 1-2.) The Army explained:

> Under current USPTO policy, patent applications having a TOP SECRET classification are not examined for patentability until the TOP SECRET classification is removed. This would happen if the application was declassified or if the classification was downgraded to the level of SECRET or below. Mr. Horton's patent application having an active TOP SECRET secrecy order has not been examined; therefore, Mr. Horton has not been notified that the application is in condition for allowance.

(See id. Ex. 7 at 2.)[1]

Thereafter, Horton filed the above-titled action, in which he alleges a claim for compensation and damages pursuant to 35 U.S.C. § 183.[2]

---

[1] In addition, the Army denied "us[ing] any device covered by the claims" set forth in the application it filed on Horton's behalf. (See id. Ex. 7 at 3.)

[2] The Court notes that although "[t]he owner of an application which has been placed under a secrecy order shall have a right to appeal from the order to the Secretary of Commerce under rules prescribed by him," see 35 U.S.C. § 181, Horton states he does not challenge the classification of his patent application (see Pl.'s Opp. at 3:10-11).

2

**DISCUSSION**

In its motion to dismiss, the United States argues the Court lacks subject matter jurisdiction over Horton's claim. Specifically, the United States argues that, as set forth in 35 U.S.C. § 183, the United States has waived its sovereign immunity only under conditions specified therein, and that Horton cannot show those conditions have occurred.

Section 183 is part of the Invention Secrecy Act, the key provisions of which have been described as follows:

> The Invention Secrecy Act of 1951, 35 U.S.C. §§ 181-188, authorizes the Commissioner of Patents to delay the grant of a patent on an invention the disclosure of which might be detrimental to the national security. When he believes such a danger to exist, the Commissioner is directed to 'make the application for patent in which such invention is disclosed available for inspection' to certain officials of designated defense agencies of the United States. At the request of any of these officials a secrecy order may issue withholding the grant of a patent for as long a period of time as the national interest requires.
>
> An inventor whose patent has been so withheld is prevented from exploiting his invention, for he may not disclose it to other persons as long as the secrecy order is in effect. Moreover, defense agencies of the United States to whom, pursuant to § 181, the invention has been disclosed [by] the Commissioner of Patents, may use it, prior to the issuance of a patent, secure from the threat of an infringement action brought against the United States under 28 U.S.C. § 1498. However, the inventor is not wholly deprived of the fruits of his discovery, ingenuity, and labor. Section 183 of the Act provides that he may apply to the agency responsible for the issuance of the secrecy order for 'compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure.' If a satisfactory settlement with the agency cannot be effected, the claimant then may bring suit for this compensation against the United States in the Court of Claims or in the United States District Court for the district where the claimant resides.

See Farrand Optical Co. v. United States, 317 F.2d 875, 876 (2nd Cir. 1962).

Section 183 provides as follows:

> An applicant . . . whose patent is withheld [under the Invention Secrecy Act] shall have the right, beginning at the date the applicant is notified that, except for such order, his application is otherwise in condition for allowance, or February 1, 1952, whichever is later, and ending six years after a patent is issued thereon, to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure. The right to compensation for use shall begin on the date of the first use of the invention by the Government. The head of the department or agency is authorized, upon the presentation of a claim, to enter into an agreement with the applicant, his successors, assigns, or legal

> representatives, in full settlement for the damage and/or use. This settlement agreement shall be conclusive for all purposes notwithstanding any other provision of law to the contrary. If full settlement of the claim cannot be effected, the head of the department or agency may award and pay to such applicant, his successors, assigns, or legal representatives, a sum not exceeding 75 per centum of the sum which the head of the department or agency considers just compensation for the damage and/or use. A claimant may bring suit against the United States in the United States Court of Federal Claims or in the District Court of the United States for the district in which such claimant is a resident for an amount which when added to the award shall constitute just compensation for the damage and/or use of the invention by the Government. The owner of any patent issued upon an application that was subject to a secrecy order issued pursuant to section 181, who did not apply for compensation as above provided, shall have the right, after the date of issuance of such patent, to bring suit in the United States Court of Federal Claims for just compensation for the damage caused by reason of the order of secrecy and/or use by the Government of the invention resulting from his disclosure. The right to compensation for use shall begin on the date of the first use of the invention by the Government. In a suit under the provisions of this section the United States may avail itself of all defenses it may plead in an action under section 1498 of title 28. This section shall not confer a right of action on anyone or his successors, assigns, or legal representatives who, while in the full-time employment or service of the United States, discovered, invented, or developed the invention on which the claim is based.

See 35 U.S.C. § 183.

An inventor seeking compensation under § 183 thus has "two avenues" of recourse he can pursue. See Hornback v. United States, 601 F.3d 1382, 1385 (Fed. Cir. 2010). Pursuant to the first, the inventor "may apply for compensation directly from the head of the department or agency that sought imposition of the secrecy order," and, if "unhappy with the award that the government department or agency provides," may bring suit in a district court or the Court of Federal Claims; with the first such "avenue," the right to apply for compensation "begin[s]" when the inventor is notified the application "'is otherwise in condition for allowance.'" See id. (quoting 35 U.S.C. § 183). Pursuant to the second such avenue, an inventor who has not applied for compensation directly from the department or agency may file suit in the Court of Federal Claims, but "must wait until 'after the date of issuance of [the] patent.'" See id. (quoting 35 U.S.C. § 183; alteration in original).[3] Here, Horton seeks to proceed pursuant to the first of the two available "avenues," the only

---

[3] The Court observes that the United States, by notice filed March 10, 2014, has stated the Army intends to request the PTO rescind the subject Secrecy Order.

4

option under which an inventor can proceed in district court.

As noted above, the United States contends the Court at this time lacks jurisdiction over Horton's complaint; in particular, as the United States points out, the PTO has not notified Horton that his patent application is in condition for allowance.

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (internal citations omitted). As set forth above, § 183 limits the circumstances under which a district court may hear a claim thereunder, and, specifically, to cases in which (1) the PTO has notified the inventor his application is in condition for allowance, (2) the inventor has submitted an administrative claim to the agency that requested the PTO issue the secrecy order, and (3) the administrative process did not result in a settlement agreement. See 35 U.S.C. § 183.

Although Horton concedes the first of the above-listed requirements has not been met (see Compl. ¶¶ 28-30), he argues such requirement is not jurisdictional, and, consequently, he should be allowed to argue that such requirement, for equitable reasons, should be waived.[4] In support of his argument, Horton relies on Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), in which the Supreme Court held that the Civil Rights Act of 1964's requirement that its terms only apply to employers with fifteen or more employees is not "jurisdictional" but "an element of a plaintiff's claim for relief." See id. at 504, 515. According to Horton, Arbaugh should be understood as holding more generally that "statutory limitations on suit, such as conditions precedent, are not jurisdictional." (See Pl.'s Opp. at 12:1-20.) Because Arbaugh did not involve a claim against the United States, however, the Supreme Court had no occasion therein to address, nor did it address, the manner in which a court determines whether the United States has waived its sovereign

---

[4] According to Horton, because the PTO has not considered whether his application is in condition for issuance, and because, he states, he was misled about the process at the time he agreed to have an attorney for the Army submit his application to the PTO, the United States should be equitably estopped from relying on the requirement that the PTO notify him that the application is in condition for issuance.

5

immunity.  Rather, as the Supreme Court has explained, with respect to claims against the United States, any "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied," even where an exception would be recognized in a case brought against private parties.  See Soriano v. United States, 352 U.S. 270, 275-76 (1957) (holding statutory requirement that plaintiff file suit against United States within six years of date claim accrues is jurisdictional requirement, and, consequently, a plaintiff cannot rely on doctrine of equitable tolling to extend time period to file suit; distinguishing cases recognizing equitable tolling as "involv[ing] private citizens" and having "no applicability to claims against the sovereign").

Accordingly, the Court finds the above-described requirement, specifically, that the PTO notify the inventor that his application is in condition for issuance, is jurisdictional.

Lastly, Horton argues that the Court should not dismiss the complaint for lack of jurisdiction without first affording him leave to "take discovery on the issue of jurisdiction." (See Pl.'s Opp. at 13:16-18.)  Horton, however, identifies no factual issue in dispute that pertains to jurisdiction, and, indeed, as discussed above, he alleges the PTO has not notified him that his application is in condition for allowance.  Consequently, leave to conduct discovery will not be afforded, and the complaint will be dismissed.

## CONCLUSION

For the reasons stated above, the United States' motion to dismiss is hereby GRANTED, and the complaint is hereby DISMISSED for lack of jurisdiction.

**IT IS SO ORDERED.**

Dated:  March 14, 2014

MAXINE M. CHESNEY
United States District Judge